UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Honorable Michael A. Hammer<br>United States Magistrate Judge | Martin Luther King, Jr. Federal<br>Building & U.S. Courthouse<br>50 Walnut Street, Newark, NJ 07101 |

February 6, 2012

## LETTER ORDER

RE:   AllGood Entertainment, Inc., et. al. v. Gridiron Video, et al.,
        Civil Action No. 09-2406 (JLL)

Dear Litigants:

Presently before the Court is Plaintiffs' motion for default judgment [ECF No. 46]. The Honorable Jose L. Linares, United States District Judge, referred the motion to the Undersigned for Report and Recommendation. For the reasons set forth below, the Court vacates the entry of default, terminates the motion for default judgment, requires the defendants to answer or otherwise respond to the Complaint on or before March 12, 2012, and requires the corporate defendants to obtain counsel on or before March 12, 2012. The Court also schedules a telephone status conference for February 24, 2012, at 11:30 a.m., which plaintiff will initiate.

**Brief Factual Background**

Plaintiffs AllGood Entertainment, Inc. and AllGood Sports, Inc. (collectively, "AllGood") are New Jersey companies. In late 2005 or early 2006, Patrick Allocco, their Chief Executive Officer, decided that the plaintiffs should enter the professional sports market. (Compl. ¶¶ 3–4, 20–21, May 19, 2009, ECF No. 1.) AllGood began working with defendants Tim Brown, Locker 81 Inc., Lawrence Falk, and the Blackstone Group. (See, e.g., Am. Compl. ¶¶ 22, 24, 48–49.) Defendants Brown and Falk are Texas residents, and Locker 81 is a Texas company. (Id. ¶¶ 6–8.) In 2006, Allocco held a meeting with Brown and Falk in Dallas, Texas, where the parties allegedly conceived of "Gridiron Video," a DVD set of instructional videos starring notable professional football players. (Id. ¶¶ 30–32.) Thereafter, Falk, Brown, and Blackstone allegedly schemed to undermine investment in AllGood and misled AllGood in an effort to continue the "Gridiron Video" project without AllGood. (See, e.g., id. ¶¶ 14–15, 56, 65, 67, 72.)

**Procedural Background**

On May 19, 2009, AllGood filed a Complaint against Falk, Brown, Locker 81, Blackstone, and "Gridiron Video, Inc." (Compl. ¶¶ 5–9.) As to the last defendant, the Complaint states that "defendant Gridiron was and is a corporation duly organized and existing

under the laws of the State of Texas [need address]." (Compl. ¶ 5 (bracketed text in original).) Blackstone was later dismissed pursuant to a stipulation. (See Order, Apr. 20, 2010, ECF No. 27.)

Defendant Falk and Brown are not lawyers, and have defended themselves pro se throughout the case. Similarly, the defendant companies have not been represented by counsel in this litigation.

In an application filed July 28, 2009, defendant Falk requested an extension to answer, move, or otherwise reply to the Complaint. (Falk Extension Appl., filed July 28, 2009, ECF No. 5.) Falk represented that service of process had been effected but that he "[i]n no way desire[d] to waive any jurisdictional issues the court may consider." (Id.) In a cover letter and attached certification, Falk further stated that he "d[id] not believe I am subject to New Jersey jurisdiction." (Falk Letter, filed July 28, 2009, ECF No. 5; Falk Certif. ¶ 4, filed July 28, 2009, ECF No. 5.) In an application filed August 3, 2009, defendant Brown requested the same extension to answer, move, or otherwise reply. (Brown Extension Appl., filed Aug. 3, 2009, ECF No. 6.) Brown used the same language as Falk to state that he did not waive any jurisdictional issues. (Id.)

On August 12, 2009, Falk made a "special appearance" objecting to personal jurisdiction and included a supporting affidavit. (Falk Special Appearance, Aug. 12, 2009, ECF No. 10; Falk Aff., dated Aug. 11, 2009, ECF No. 10.) In the alternative, Falk requested that the Court transfer the case to Texas. (Falk Special Appearance at 2.) On August 18, 2009, Brown also made a special appearance objecting to personal jurisdiction with a supporting affidavit and requested the same alternative relief. (Brown Special Appearance, Aug. 18, 2009, ECF No. 12; Brown Aff., dated Aug. 14, 2009, ECF No. 13.)

On October 1, 2009, the case was reassigned to a different district court judge. (Order Reassigning Case, Oct. 1, 2009, ECF No. 21.) On March 15, 2010, the case was reassigned for a second time to another district court judge. (Order Reassigning Case, Mar. 15, 2010, ECF No. 25.) On October 5, 2010, the case was reassigned for a third time to another district court judge. (Order Reassigning Case, Oct. 5, 2010, ECF No. 28.)

On October 14, 2010, the Court issued a notice of call for dismissal pursuant to Local Civil Rule 41.1. (Call for Dismissal, Oct. 14, 2010, ECF No. 29.) In response, AllGood filed a certification and affidavit to demonstrate good cause why this matter should not be dismissed. (Bordetsky Certif., Oct. 22, 2010, ECF No. 30; Allocco Aff., Oct. 22, 2010, ECF No. 31.) AllGood represented that Falk and Brown did not properly appear, answer, or move to dismiss. (Bordetsky Certif. ¶ 6, Oct. 22, 2010.) Specifically, Allgood's local counsel made the following assertion: the unadmitted partner of AllGood's pro hac vice counsel had called the chambers of the then-assigned district court judge and was told by a law clerk that the Court did not consider the letters of Falk and Brown to be motions and that no opposition was necessary or required. (Id. ¶ 7.) The law clerk further allegedly stated that the documents were not answers. (Id.)

Furthermore, the local counsel asserted that he had called the Clerk of the Court who confirmed the same. (Id. ¶ 8.) AllGood also stated that there had been numerous but unsuccessful settlement discussions with Falk, "who purported to speak on behalf of the other Defendants." (Id. ¶ 9) These discussions and preoccupation with other litigation were the bases for AllGood's delay. (Allocco Aff. ¶¶ 3–5; see also Bordetsky Certif. ¶¶ 9–10, Oct. 22, 2010.) Finally, AllGood stated that it was preparing to move for default against the remaining defendants. (Bordetsky Certif. ¶ 12, Oct. 22, 2010.)

Following AllGood's submission, Falk filed letters dated October 29, 2010, and November 16, 2010. In an October 29, 2010 letter copied to the Court, Falk referred AllGood's counsel to his special appearance concerning jurisdictional issues. (Falk Letter, dated Oct. 29, 2010, ECF No. 34.) In a letter dated November 16, 2010, Falk made certain factual assertions, but stated that the "letter should in no way be considered an answer." (Falk Letter, dated Nov. 16, 2010, ECF No. 39.)

On November 18, 2010, the Court issued an order directing AllGood to move for entry of default by a certain date. (Order, Nov. 18, 2010, ECF No. 35.) On November 24, 2010, AllGood moved for default judgment. (Mots. for Default J., Nov. 24, 2010, ECF Nos. 36–38.) On February 3, 2011, the Court denied AllGood's motion for failing to first obtain an entry of default from the Clerk of the Court. (Order, Feb. 3, 2011, ECF No. 41.) On June 23, 2011, AllGood requested an entry of default from the Clerk of the Court (Request for Entry of Default, June 23, 2011, ECF No. 42), which the Clerk entered against all the remaining defendants. (Entry of Default, June 24, 2011, ECF No. 43.)

In an email copied to the Court and filed on July 1, 20011, Falk expressed his concern to AllGood's counsel that the Court had not addressed his request for a special appearance, and asked counsel whether this was an oversight. (Falk Email, filed July 1, 2011, ECF No. 44.) In addition, Falk added, "[p]ending the outcome of the special appearance I am prepared to answer the complaint." (Id.)

On August 23, 2011, the Court issued a letter order directing AllGood to move this action by requesting default judgment or submitting an extension for the defendants to answer. (Letter-Order, Aug. 23, 2011, ECF No. 45.) On September 1, 2011, AllGood moved for default judgment against all the remaining defendants. (Mot. for Default J., Sept. 1, 2011, ECF No. 46.) In an attached certification and affidavit, AllGood added new factual allegations and legal assertions regarding personal jurisdiction. (See Allocco Aff., Sept. 1, 2011, ECF No. 46; Bordetsky Certif., Sept. 1, 2011, ECF No. 46.)

In a letter filed on September 27, 2011, Falk requested additional time to respond to the motion for default judgment. (Falk Letter, dated Sept. 19, 2011, ECF No. 47.) On October 6, 2011, the Court held a telephone conference with AllGood's counsel and Falk regarding Falk's request for an extension. The Court granted the extension and directed that Falk respond to the motion for default judgment by November 3, 2011. (Order, Oct. 6, 2011, ECF No. 49.)

3

On November 10, 2011, Falk filed an Answer. (Falk's Answer, filed Nov. 10, 2011, dated Oct. 31, 2011, ECF No. 50.) On the same day, Falk filed notices of motion to dismiss the Complaint and to join Blackstone's motion to dismiss. (Notice of Mot. to Dismiss, filed Nov. 10, 2011, dated Oct. 31, 2011, ECF No. 51; Notice of Mot. to Join Mot. to Dismiss, filed Nov. 10, 2011, dated Oct. 31, 2011, ECF No. 52.) On November 21, 2011, AllGood filed a letter requesting that the Court reject or strike Falk's Answer as untimely and unsigned and that the Court rule on the motion for default judgment. (Pls.' Letter, Nov. 21, 2011, ECF No. 53.)

On November 29, 2011, the Honorable Jose L. Linares referred the motion for default judgment to the Undersigned.

### Entry of Default and Default Judgment

Under Federal Rule of Civil Procedure 55, the clerk must enter default against a party, "[w]hen a party . . . has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Thereafter, a party can move to convert that entry into a default judgment. Fed. R. Civ. P. 55(b); Sourcecorp Inc. v. Croney, 412 F. App'x 455, 458 (3d Cir. 2011). Entries of default and default judgments are generally disfavored, and courts should, in doubtful cases, set aside entries of default or default judgments in order to allow cases to be decided on their merits. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984).

Under Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). A court's decision to set aside an entry of default is primarily left to its own sound discretion. See U.S. Currency, 728 F.2d at 194 (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). Also, "[t]here is a distinction between a default standing alone and a default judgment," and "[l]ess substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656–57 (3d Cir. 1982); accord Mettle v. First Union Nat'l Bank, 279 F. Supp. 2d 598, 601 (D.N.J. 2003). Normally, the Court considers three factors: (1) the prejudice to the plaintiff if default is set aside, (2) the existence of a meritorious defense, and (3) whether the defendant's culpable misconduct caused the default. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (1984). But in cases where default is improperly entered, the Court may set it aside without consideration of these factors. Mettle, 279 F. Supp. 2d at 603 n.3 (setting aside default without considering factors because default was void); accord Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985) ("[I]t is not necessary for us to resort to an analysis of those factors in this case because they apply only when the default judgment was authorized and the only question before the district court is whether to exercise its discretion to set aside the default. Obviously, if the default judgment was improperly entered, the district court erred as a matter of law in refusing to set it aside.").

Lastly, a magistrate judge has the authority to set aside an entry of default, as it is not dispositive. See L. Civ. R. 72.1(a)(1); Allyn Z. Lite, N.J. Federal Practice Rules, Comment. 3 to Rule 72.1(a), 323 (2012 ed. 2011). Cf. Resolution Trust Co. v. Spagnoli, 811 F. Supp. 1005,

4

1007 n.1 (D.N.J. 1993) (noting without further comment that magistrate judge had previously vacated defaults against defendants); Home Box Office, Inc. v. Tel-A-View Elecs., Corp., Civ. No. 86-1491, 1986 WL 12768, at *1 (E.D. Pa. Nov. 7, 1986) (rejecting contention "that the clerk's entry of default is dispositive" and noting that "[a]n entry of default is not a default judgment").

**Default Entered in Error Against Falk and Brown**

Entry of default is appropriate when a party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). But a review of the record reveals that Falk and Brown have asserted that this Court lacks personal jurisdiction since their very first submissions. In July 2009, Falk requested additional time to answer, move, or respond and stated that he did not believe that jurisdiction in New Jersey was proper. (See Falk Extension Appl., filed July 28, 2009; Falk Letter, filed July 28, 2009; Falk Certif. ¶ 4, filed July 28, 2009.) In August 2009, Brown made a similar request and assertion. (Brown App. For Extension, filed Aug. 3, 2009.) Later in August 2009, Falk and Brown made "special appearance[s]" objecting to personal jurisdiction and including a supporting affidavit. (Falk Special Appearance, Aug. 12, 2009; Falk Aff., dated Aug. 11, 2009; Brown Special Appearance, Aug. 18, 2009; Brown Aff., dated Aug. 14, 2009.) In October 2010, November 2010, and July 2011, Falk filed more letters with the Court concerning his special appearance. (Falk Letter, dated Oct. 29, 2010; Falk Letter, dated Nov. 16, 2010; Falk Email, filed July 1, 2011.)

Notwithstanding AllGood's assertions, the Court never resolved Falk's and Brown's challenges to personal jurisdiction. AllGood asserts that a judicial law clerk told AllGood's non-admitted New York counsel that no opposition was necessary or required because the Court did not consider the letters of Falk and Brown to be motions or answers. (Bordetsky Certif. ¶¶ 12–15, Sept. 1, 2011; see also Bordetsky Certif. ¶¶ 6–7, Oct. 22, 2010.) No order, however, memorializes any action that the Court took on these letters, and thus the record indicates that the Court has not yet addressed these assertions. Cf. Moco Invs., LLC v. United States, Civ. No. 06-4040, 2007 WL 2669326, at *1 (D.N.J. Sept. 5, 2007) (refusing to credit plaintiff's assertion that he received a phone call from law clerk regarding an adjournment request where there was no request on the electronic docket and no signed order granting adjournment). Moreover, AllGood's assertion was and continues to be defective because the affiant (local counsel) did not have personal knowledge of this phone call between the law clerk and the pro hac vice counsel's unadmitted partner. L. Civ. R. 7.2(a) (restricting affidavits to facts within the personal knowledge of the affiant); see, e.g., Sunoco, Inc. (R & M) v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 576–77 (D.N.J. 2008) (striking attorney certification in part for not containing facts within the personal knowledge of the affiant).

Furthermore, Falk's and Brown's challenges to personal jurisdiction are technically deficient, but this record is insufficient to conclude that they waived this defense. Normally, "[t]he threshold defense of lack of personal jurisdiction is waived if it is not included in a preliminary motion under Rule 12 as required by Rule 12(g), or not included in a responsive pleading or an amendment as of right to that pleading under Rule 15(a)." Newman v. Axiom

5

Worldwide, Civ. No. 06-5564, 2010 WL 2265227, at *1 (D.N.J. June 2, 2010) (citing Fed. R. Civ. P. 12(h)(1)).  Here, Falk and Brown raised their jurisdictional defense either as an application or as a "special appearance under Rule 12(b)2 [sic] of the Federal Rules of Civil Procedure."  (See, e.g., Falk Special Appearance, Aug. 12, 2009; Brown Special Appearance, Aug. 18, 2009.)  These applications, however, are not properly filed motions, see L. Civ. R. 7.1, and "Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances."  Neifeld v. Steinberg, 438 F.2d 423, 429 (3d Cir. 1971) (quoting Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir. 1944), cert. denied 322 U.S. 740) (1944)).[1]

While Falk and Brown sought to contest personal jurisdiction incorrectly, the Court cannot find that their actions waived those defenses.  Under Rule 12, a defendant "is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within."  Orange Theatre, 139 F.2d at 874, accord Neifeld, 438 F.2d at 429 .  Also, the Court may be more lenient to pro se litigants when the circumstances permit.  See Huertas v. U.S. Dep't of Educ., Civ. No. 08-3959, 2010 WL 2771767, at *5 (D.N.J. July 12, 2010) (collecting cases).  To find that these out-of-state pro se litigants waived their defense of personal jurisdiction by incorrectly using an antedated procedure would employ a standard that the Third Circuit Court of Appeals rejected in Orange Theatre.  On this record, what is important is that these defendants meant to contest personal jurisdiction under Rule 12 and did so as early as July 28, 2009 and thereafter.

Thus, this record indicates that Falk and Brown attempted to "otherwise defend," albeit defectively.  Fed. R. Civ. P. 55(a).  Falk and Brown did not challenge personal jurisdiction by way of formal motion, and therefore the Court has not had occasion yet to address that issue.  But neither has the Court yet denied, terminated, or otherwise resolved their challenges to personal jurisdiction.  The Court must nonetheless conclude from the record that Falk and Brown, however imperfectly, have preserved the challenge to personal jurisdiction.  Therefore, the Court cannot find that entry of default was proper as to Falk and Brown.  Accordingly, the Court finds that this constitutes good cause to vacate the entry of default as well as necessary to correct a clerical mistake on the record.  See Fed. R. Civ. P. 55(c); see also Fed R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever

---

[1] Falk and Brown, who are Texas-residents and are proceeding pro se, may have had Texas civil procedure in mind, which still permits special appearances to contest personal jurisdiction.  See Tex. R. Civ. P. 120a(1) ("[A] special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State.").  Incidentally, New Jersey has eliminated special appearances.  See N.J. Ct. R. 4:6-2 ("Special appearances are superceded").  Regardless, the parties should take note that, in federal court, the Federal Rules of Civil Procedure govern the manner in which litigants contest personal jurisdiction.  Neifeld, 438 F.2d at 426.

one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice.").

### Default Entered in Error Against Gridiron Video

The Court also finds that default was improperly entered against Gridiron Video.  In its Complaint, AllGood alleges that "defendant Gridiron was and is a corporation duly organized and existing under the laws of the State of Texas **[need address]**."  (Compl. ¶ 5 (bracketed text in original) (emphasis added).)  Also, throughout the factual narrative of the Complaint, Gridiron Video is generally described as a project, not a company.  (See id. ¶¶ 11–84.)[2]  Not only does the Complaint lack an address for defendant Gridiron Video, but the Complaint provides no indication as to who its officers are.  These facts are important because when AllGood served Gridiron, it simply served Falk at his address at the very same time.  (See Aff. of Serv. on Falk, filed Sept. 18, 2009, ECF No. 17 (noting service at July 8, 2009, at 7:16 p.m.); Aff. of Serv. on Gridiron, filed Sept. 18, 2009, ECF No. 16 (same).)  These same affidavits were used to support the entry of default.  (See Bordetsky Decl. Exs. A, D, June 23, 2011, ECF No. 42.)

The Court fails to understand how AllGood has complied with service under Rule 4 of the Federal Rules of Civil Procedure.  First, AllGood apparently does not know where defendant Gridiron Video is located as AllGood merely wrote "[need address]" to describe Gridiron Video's address.  (Compl. ¶ 5.)  Moreover, nothing in the Complaint indicates that Falk is an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  In contrast, AllGood alleges that Brown is the CEO of Locker 81.  (Compl. ¶ 23.)

Relatedly, Falk has repeatedly asserted that no company called Gridiron Video ever existed.  (Falk Letter, dated Nov. 16, 2010, 2010 ("They was never, nor has any such company existed called; [sic] Gridiron Video Incorporated . . . ."); Falk Email, filed July 1, 2011 (requesting that AllGood's counsel "address future correspondence to me personally rather than Gridiron Video, In., to ensure proper delivery of correspondence as there is no such entity that I am aware of.").)  Importantly, Falk cannot represent Gridiron Video, because a corporation cannot defend itself either pro se or by a representative or agent of the corporation; a corporation must be represented by counsel.  Simbraw, Inc. v. United States, 367 F.2d 373, 373 (3d Cir. 1966); accord American Corporate Soc'y v. Valley Forge Ins. Co., 424 F. App'x 86, 87 n.1 (3d Cir. 2011).  But to the extent that AllGood views Falk and Gridiron Video as having the same identity, any judgment that the Court grants as to Gridiron would be imposed on Falk.

---

[2] But see Compl. ¶ 63 ("However, upon information and belief, Blackstone, Brown, Falk and the Players raised the capital for Gridiron Video and their company, defendant Gridiron."); ¶ 80 ("Upon information and belief, to date, Blackstone has partially or fully funded Gridiron Video for Gridiron, Brown Falk and the Players."); ¶ 83 ("Hence, Brown and Falk wrongfully and intentionally misdirected all of the Players to their own company, defendant Gridiron, and directly interfered with the contractual relationships AllGood had with the Players.")

Accordingly, given the deficiencies in AllGood's Complaint, the doubts over proper service, and the disfavor of entries of default (let alone default judgment), the Court sets aside default against defendant Gridiron Video, Inc.  See Mettle, 279 F. Supp. 2d at 601–03 (setting aside default because of insufficient service of process); accord Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 493 (3d Cir. 1993) (setting aside default judgment because of improper service).

### Default Vacated Against Locker 81, Inc.

The Court also vacates the default against the one remaining defendant, Locker 81, Inc.  Like defendant Gridiron Video, Locker 81 is a corporation and therefore must be represented by counsel.  Simbraw, 367 F.2d 373.  No assertion of a lack of personal jurisdiction has been made on behalf of Locker 81.  Nonetheless, the open question of the existence of personal jurisdiction over Brown leaves similar, if not the same, questions as to defendant Locker 81.

AllGood's Complaint is unclear as to what extent Brown acted as an individual and to what extent he acted as a corporate officer.  AllGood ascribes some responsibilities and liabilities solely with Brown as an individual, and not as CEO of Locker.  For example, AllGood alleges that Brown "was hired to be the high profile face of the project and to solicit his friends and the biggest names in the NFL."  (Compl. ¶ 13.)  AllGood allegedly paid Brown a $50,0000 signing bonus, which AllGood seeks to recover exclusively from Brown, and not from Locker 81.  (Compl. ¶¶ 186–189.)  Similarly, AllGood alleges that "all defendants" committed fraud, but then inconsistently specifies acts committed by every defendant except Locker 81.  (See Compl. ¶¶ 85–92.)  Thus, AllGood apparently intends to direct these claims against Brown as an individual separate from any corporate liability that attaches to Locker 81.

AllGood ascribes other conduct and liability, however, to both Brown and Locker 81.  For example, AllGood alleges that both Brown and Locker 81 breached a marketing agreement and tortiously interfered with contracts with players whom Brown had solicited for AllGood.  (Compl. ¶¶ 113–122, 142–150.)  The same goes for claims of breach of partnership and joint venture agreements, breach of implied covenant of good faith, breach of fiduciary duty, promissory estoppel, unfair competition, and misappropriation of trade secrets.  (Compl. ¶¶ 107–112, 123–141, 151–165.)  Importantly, the actions of Locker 81 are alleged to have occurred only through Brown; no other agent of Locker 81 is alleged to have acted on its behalf.

Normally, "[e]ach defendant's contacts with the forum State must be assessed individually." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  Yet, it is well known that "a corporation can act only through its officers, directors and other agents." Ramsbottom v. First Pa. Bank, N.A., 718 F. Supp. 405, 412 (D.N.J. 1989).  Personal jurisdiction over Locker 81 can only exist if Brown's acts toward New Jersey are sufficient to subject Locker 81 to the Court's jurisdiction.  Failure to find personal jurisdiction over Brown may mean that the Court cannot find personal jurisdiction over Locker 81 either.  The same is not necessarily true for Brown, since he may be subject to personal jurisdiction on those claims that solely apply

to him as an individual. Because Locker 81's acts toward New Jersey are entirely bound together with Brown's acts, it is entirely possible that Brown's challenge to personal jurisdiction will undermine (or clarify) the Court's jurisdiction over Locker 81.

Accordingly, a lack of personal jurisdiction over Brown would constitute a meritorious defense for Locker 81, and eventually the Court will have to consider whether personal jurisdiction over Locker 81 exists. A court cannot enter default judgment without personal jurisdiction over a defendant; such a judgment is void. HICA Educ. Loan Corp. v. Lepera, Civ. No. 11-960, 2011 WL 3515911, at *2 (D.N.J. Aug. 10, 2011). Before entering default judgment, the court has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Bank of Am., N.A. v. Hewitt, Civ. No. 07-4536, 2008 WL 4852912, at *2 (D.N.J. Nov. 7, 2008) (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)) (internal quotation marks omitted); accord Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 n.7 (2d Cir. 2010) (collecting cases and "agree[ing] with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant"). A party may waive personal jurisdiction, but when a court inquires sua sponte into personal jurisdiction on a motion for default judgment, a court is determining whether it has the power to enter default judgment. D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 437–38 (E.D. Pa. 2006) (citing Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).[3]

As the Third Circuit Court of Appeals has stated

> Between the extremes of repeated contumacious conduct and innocent procedural error are the manifold instances of neglect and inadvertence that require trial courts to weigh the equities of the situation and the need for the efficacious resolution of controversies. The exercise of such judgment does not lend itself to a rigid formula or to a per se rule.

Hritz, 732 F.2d at 1181. Here, vacation of default will clarify the Court's jurisdiction over the remaining defendants. Also, it will permit Brown, Locker 81's CEO, to either obtain counsel for his company or choose to subject it to default. See O'Brien v. Biobanc USA, Civ. No. 09-2289, 2011 WL 2532465, at *2 (D.N.J. June 23, 2011) (noting that corporate defendant was given specific deadline to obtain counsel before entry of default).

---

[3] Notably, AllGood appears to implicitly recognize the need to establish personal jurisdiction here as the Allocco affidavit supporting the motion for default judgment adds factual detail regarding personal jurisdiction that is wholly absent from the Complaint. (Allocco Aff. ¶ 9, Sept. 1, 2011 (stating that Brown and Falk came to New Jersey to negotiate the Brown/Locker 81 agreement, and that they made follow-up calls to New Jersey.) Also, AllGood's counsel purports to add a legal basis as well. Counsel states inexplicably and without elaboration that personal jurisdiction is based on "FRCP §2.4(3)" despite the fact that no such provision exitss in the Federal Rules of Civil Procedure. (Bordetsky Certif. ¶ 20, Sept. 1, 2011.)

Accordingly, the Court vacates the entry of default to allow the parties to clarify the questions raised by the record.

## Conclusion

For the reasons set forth above, the Court vacates the entry of default for having been improperly entered and terminates [ECF No. 46] the motion for default judgment.

Additionally, the Court imposes the following deadlines:

1. There will be a telephone status conference before the Undersigned on **February 24, 2012, at 11:30 a.m.** Plaintiff will kindly initiate the conference.

2. On or before **March 12, 2012**, defendants shall answer or otherwise respond to the Complaint. Any motion to dismiss for lack of personal jurisdiction or otherwise shall be filed in compliance with Local Civil Rule 7.1 of the Local Rules for the United States District Court for the District of New Jersey.

3. On or before **March 12, 2012,** any corporate defendants shall obtain counsel, who shall file a notice of appearance in this action.

**So Ordered**,

s/*Michael A. Hammer*
UNITED STATES MAGISTRATE JUDGE